2024 IL App (1st) 232083-U

FIFTH DIVISION
FEBRUARY 8, 2024

No. 1-23-2083B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 0297601 |
| | ) | |
| SHADERAL SHAW, | ) | Honorable |
| | ) | Tiana Blakely, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment.

ORDER

¶ 1    *Held*:   The circuit court's order denying the defendant's pretrial release is affirmed.

¶ 2    On February 26, 2022, the circuit court entered an order detaining the defendant-appellant, Shaderal Shaw, on a $420,000 deposit-bond (D-bond). On October 23, 2023, the State filed a petition for a pretrial detention hearing in Mr. Shaw's case. On that date, the circuit court conducted a hearing on the petition. In the hearing, the circuit court granted the State's petition for pretrial detention under the dangerousness standard of section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) as amended by Public Acts 101-652, § 10-255 and 102-1104 § 70 (eff.

Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial Fairness Act. On appeal, Mr. Shaw argues that the circuit court erred in its order because the State failed to meet its burden of proof by clear and convincing evidence. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                         BACKGROUND

¶ 4      On February 25, 2022, Mr. Shaw was arrested and charged with unlawful possession of a firearm and aggravated unlawful use of a weapon. On February 26, 2022, the trial court entered an order detaining Mr. Shaw on a $420,000 D-bond. On March 22, 2022, the amount was increased to a $500,000 D-bond. If Mr. Shaw was able to pay the deposit of $50,000, he would be released on electronic monitoring. However, Mr. Shaw was still held on bond on September 18, 2023, when the amendment of section 110-6.1 of the Code went into effect, eliminated cash bonds. On October 10, 2023, Mr. Shaw filed a motion for pretrial release pursuant to the amended statute, while the State simultaneously filed a petition for a pretrial detention hearing.

¶ 5      On October 23, 2023, the trial court conducted a pretrial detention hearing. During the hearing, the State proffered that Mr. Shaw was pulled over, as the driver of his vehicle, for speeding. During the traffic stop, he attempted to flee on foot while leaving his four-year-old child in the front passenger seat of the car. He was subsequently arrested, and a check of the vehicle's registration showed it belonged to Mr. Shaw. When officers conducted an inventory search of the vehicle, pursuant to a tow, in the unlocked glove box, they found a Glock 17 firearm with a laser sight and an extended magazine with 29 live rounds. The barrel of the firearm and the stock had mismatched serial numbers, meaning the firearm was assembled as opposed to bought as one component. The State also explained that Mr. Shaw was on parole for armed robbery at the time

of the offense. Mr. Shaw's background consisted of an armed robbery in 2017, where he received 8 years' imprisonment, and a 2013 aggravated robbery involving a firearm when he was a juvenile.

¶ 6    Mr. Shaw's trial counsel argued that nothing in the State's proffered information explained how he was a threat to the community or a specific person and that there was no indication that he touched any weapon. In mitigation, counsel stated Mr. Shaw is 25 years old, has two children, and has lived his entire life in Cook County. Counsel also mentioned that Mr. Shaw's whole family resided in Cook County, and he had family support in the gallery during the hearing. Since his incarceration, he had lost opportunities to provide for his family. During his incarceration, Mr. Shaw had also completed 107 learning hours and 13 hours of supplemental learning. Trial counsel also argued that, if alternatively, the court found that Mr. Shaw was a threat, the threat could be mitigated by placing Mr. Shaw on electronic monitoring.

¶ 7    The trial court found that the State met its burden by clear and convincing evidence that the proof is evident and the presumption is great that Mr. Shaw committed the offense. Moreover, the court found that Mr. Shaw posed a real threat to the safety of the community. While the court noted that it was a simple possession case and Mr. Shaw was not reaching for the weapon, it was concerned that the firearm had a laser sight and an extended magazine, especially when it considered that Mr. Shaw was on parole for a violent felony. As a result, the court did not feel any set of conditions could mitigate the threat to the community that Mr. Shaw posed. On November 2, 2023, Mr. Shaw filed his notice of appeal regarding the October 23, 2023, order.

¶ 8                                    ANALYSIS

¶ 9    We note that we have jurisdiction to consider this matter, as Mr. Shaw filed a timely notice of appeal. See Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023).

¶ 10     Mr. Shaw argues that the State failed to meet its burden of proof on each of the three prongs required by the statute.

¶ 11     When reviewing the trial court's order granting, denying, or setting conditions on pretrial release, we afford great deference to the trial court's factual determinations and will reverse them only if they are against the manifest weight of the evidence. *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8. While there is a split amongst the districts about the standard of review for an appeal pursuant to the newly amended section 110-6.1 of the Code (725 ILCS 5/110-6.1(West 2022)), the First District has found that the appropriate standard of review of the court's ultimate decision to detain is an abuse of discretion standard. *People v. Whitmore*, 2023 IL App (1st) 231807B, ¶ 18; See *Inman*, 2023 IL App (4th) 20864 (stating the appropriate standard of review is an abuse of discretion), ¶ 10; *Cf. People v. Gibbs*, 2023 IL App (5th) 230700-U, ¶ 5 (stating conversely that the appropriate standard of review is manifest weight of the evidence). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the trial court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 12     Under section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)), a trial court may deny a defendant pretrial release only if, "the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant is charged with a forcible felony." Moreover, though all defendants "shall be presumed eligible for pretrial release," the State bears the burden of proving by clear and convincing evidence that "the proof is evident or the presumption great" that the defendant committed an offense listed in section 110-6.1(a) of the

Code; that the defendant "poses a real and present threat to the safety of any person or persons or the community, based on articulable facts; and that "no condition or combination of conditions set forth in subsection (b) of section 110-10 [of the Code] can mitigate (i) the real and present threat to the safety of any person or persons or the community" for the enumerated offenses in section 110-6.1(a) of the Code, or "(ii) the defendant's willful flight for offenses listed in section 110-6.1(a)(8) of the Code." 725 ILCS 5/110-6.1(e) (West 2022)).

¶ 13    Initially, Mr. Shaw argues that the State did not prove the presumption is great that he committed the offense because it is possible that the gun may be suppressed. This argument was not raised during the pretrial detention hearing.

¶ 14    "Traffic stops are more analogous to a *Terry* investigative stop than to a formal arrest. [Citations.] Therefore, we analyze such stops under the principles of *Terry*." *People v. Moss*, 217 Ill. 2d 511, 526 (2005). The analysis of a Terry stop involves two steps. *Moss*, 217 Ill. 2d at 527. The reviewing court considers "first, whether the officer's action was justified at its inception and, second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place." *Moss*, 217 Ill. 2d at 527. Flight from an unlawful Terry stop does not give a police officer grounds for arresting a defendant on the charge of obstructing a peace officer. *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 23. "However, such flight does provide police with probable cause to arrest for obstructing a peace officer if, before defendant fled, the officer in question was justified in detaining defendant at the time of the flight." *People v. Johnson*, 408 Ill. App. 3d 107, 122 (2010).

¶ 15    Since the argument was not raised during the pretrial detention hearing, the evidence is not fully fleshed out. While there are allegations by Mr. Shaw and his trial counsel, providing reasons

why the evidence should be suppressed, no testimony was taken to make a finding on the matter. As a court of review, we are not in a position to make a finding on the matter. Moreover, we find that nothing on the face of the State's proffer shows any grounds for suppression. The State said that Mr. Shaw was stopped for speeding and then fled. Based on those facts as proffered, the police had the authority to stop Mr. Shaw after he committed a traffic offense and after he ran they had probable cause to arrest him for obstructing a peace officer. *Johnson*, 408 Ill. App. 3d at 122. After he was arrested, the car would need to be towed to remove it from the public streets. If the police department's policy was to conduct an inventory search of towed or impounded vehicles, there is nothing impermissible about the officers' actions. However, as stated, we can only rely on the evidence offered at the detention hearing, and are by no means commenting on the legitimacy of a potential motion to suppress.

¶ 16    Mr. Shaw briefly argues that the State did not establish his knowledge of the firearm in the glove compartment.

¶ 17    However, in the State's proffer, it established that the firearm was found in the vehicle's glove box.  Mr. Shaw was the owner of the vehicle and at the time of the arrest, the only other occupant was his four-year-old son. From that evidence, the trial court's finding that there was clear and convincing that Mr. Shaw knew about the firearm and had constructive possession of the firearm was not against the manifest weight of the evidence.

¶ 18    Mr. Shaw next contends that the trial court erred by finding that he was a danger to the community because there was no proof that he actually held the firearm.

¶ 19    Section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022) states the factors the trial court may consider when evaluating "whether the defendant poses a real and present threat to

the safety of any person or persons or the community. The factors include, in part, "the nature and circumstances of any offense charged[;] *** any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior[;] *** "whether the defendant is known to possess or have access to any weapon or weapons;" and "whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law." 725 ILCS 5/110-6.1(g)(1), (2)(A), (7), (8) (West 2022).

¶ 20    The proffer explained that the firearm was found in Mr. Shaw's glove box where he had access to it. Also, the firearm had a laser sight with an extended magazine and a mismatched serial number. Moreover, at the time of the arrest the defendant was on parole for an armed robbery. He also had an aggravated robbery with a firearm in his criminal background. Mr. Shaw met four of the factors, in that, he had access to a firearm, a violent criminal history, was on parole at the time of the arrest, and the nature of the offense was egregious due to the characteristics of the firearm. Accordingly, we cannot conclude that the trial court's finding that Mr. Shaw was a real and present danger to the community was not against the manifest weight of the evidence.

¶ 21    Mr. Shaw lastly argues that the State failed to show by clear and convincing evidence that no condition or set of conditions could mitigate Mr. Shaw's risk to the community.

¶ 22    At the pretrial detention hearing, the court was presented with Mr. Shaw's criminal history and the proffered circumstances that led to his arrest. It is not this court's role to reweigh the factors, so we decline to do so. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 24 ("Nothing in the Code authorizes a reviewing court to reweigh the factors at play."). Accordingly, we do not

find that the court's order was an abuse of discretion and affirm the court's order continuing the pretrial detainment and the initial pretrial detainment order.

¶ 23    We note, however, the State can improve its proffers by providing the court with the defendant's history regarding compliance or lack thereof with pretrial court-imposed restrictions such as electronic monitoring, home detention, or a curfew. That history would be beneficial to the trial court in making its assessment regarding a defendant likelihood to comply with less restrictive means than incarceration.

¶ 24                                   CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.