2024 IL App (1st) 240723-U
Order filed: July 30, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-0723B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23CR1106301 |
| | ) | |
| DEONTE SUGGS, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirmed the decision of the circuit court that defendant should continue to be detained prior to trial.

¶ 2    Defendant, Deonte Suggs, appeals from the decision of the circuit court that he should continue to be detained pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] We affirm that decision.

_____
        [1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay

¶ 3    Defendant was charged with 19 various offenses including three counts of armed robbery with a firearm, one count of being an armed habitual criminal, one count of aggravated unlawful use of a weapon, and six counts of aggravated unlawful restraint stemming from a September 15, 2023 incident. After a September 17, 2023 hearing, the circuit court ordered defendant held on a $1 million "D bond." Defendant did not post the requisite amount and remained in custody.

¶ 4    Subsequently, on November 1, 2023, the State filed a verified petition for a pretrial detention hearing, pursuant to sections 5/110-2, 6.1(a)(1), and 6.1(a)(1.5) of the Code. 725 ILCS 5/110-2, 6.1(a)(1), 6(a)(1.5) (West 2022). Therein, the State alleged that defendant is charged with detainable offenses—armed robbery with a firearm and being an armed habitual criminal—and that defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no less restrictive conditions would avoid that threat. More specifically, the State alleged that on September 15, 2023:

> "Defendant got into a verbal altercation with a civilian witness then entered the garage where the 3 complaining witnesses were standing. Defendant pointed a firearm at the complaining witnesses and demanded their phones and wallets. Defendant threatened to kill the complaining witnesses if they did not comply. The complaining witnesses threw their money, wallets, and phones on the ground and the Defendant retrieved the money then fled on foot. Complaining witnesses followed Defendant and waived down police and pointed out the Defendant to the police. The Defendant then fled while clutching a bulge in his front waistband, hopping several fences before being located hiding under stairs by

effective September 18, 2023. *Id.* ¶ 52.

the police. Two complaining witnesses identified Defendant on scene. Officers recovered a loaded firearm from the location where they observed the Defendant prior to being placed into custody and the firearm was identified by a complaining witness as that used in the robbery. United [S]tate's currency was recovered on scene. Defendant was identified in a photo array. Defendant made admissions to possession the firearm."

¶ 5     On that same day, the circuit court held a detention hearing. The State proffered that on September 15, 2023, defendant had a verbal altercation with an individual. Afterwards, defendant entered a garage where the individual had been along with the three complaining witnesses. Defendant pointed a firearm at and threatened to kill the complaining witnesses if they did not turn over their phones and wallets. The complaining witnesses threw their money, wallets, and phones on the ground. Defendant retrieved the money and left the garage on foot.

¶ 6     One complaining witness called police and the two other complaining witnesses followed defendant. They waived down police officers that were in the area and pointed out defendant. After seeing the complaining witnesses with the police, defendant fled on foot. Defendant was "clutching a bulge in his front waistband, [and] hopped several fences before being located hiding under a set of stairs by the police." The officers recovered a loaded firearm from under the stairs and United States currency. At that time, the two complaining witnesses identified defendant as the person who robbed them and the retrieved firearm as the one used in the robbery. The third complaining witness identified defendant in a photo array. Defendant admitted to possessing the firearm.

¶ 7     As to defendant's background, the State proffered that defendant has three prior felony convictions, including a 2011 possession of a weapon in a penal institute conviction, for which he was sentenced to 4 years' imprisonment which was served consecutive to the sentence of 13 years' imprisonment imposed on a 2010 aggravated vehicular hijacking with a weapon conviction; and a

2008 vehicular hijacking conviction, for which he was sentenced to 5 years' imprisonment. Additionally, defendant was adjudicated delinquent on a 2006 residential burglary charge.

¶ 8    The State argued that the proof is evident, and the presumption is great that defendant committed armed robbery and was an armed habitual criminal, defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, and no condition or combination of conditions could mitigate the threat that defendant poses.

¶ 9    Defense counsel proffered that defendant, 31 years old, is a life-long resident of Chicago. In 2023, defendant was the victim of a shooting, in which he was shot five times and as a result was in a coma from February 13 to August 20. He has residual health issues and needs medical care. Defendant's mother passed away two days prior to the hearing. Defendant has his GED. He does not work but receives social security as a result of his injuries. Defendant lives with his wife of four years and two children in a home where he can be placed on electronic monitoring.

¶ 10    The circuit court orally found that the State proved by clear and convincing evidence that the proof is evident, and the presumption is great that defendant was an armed habitual criminal and committed armed robbery, defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, and no condition or combination of conditions could mitigate the threat that defendant poses. The court, in part, noted that defendant has forcible felonies in his background and it was "concerning" that he was convicted of a weapon charge while he was incarcerated.

¶ 11    The court entered a written order reflecting its oral findings and directing that defendant be detained pretrial. Additionally, as to the finding that defendant poses a threat, the order noted, "alleged crime involved multiple CWs, a gun and [defendant's] criminal history includes

violence." As to the finding that no conditions of release could mitigate that threat, the order noted, "[defendant's] prior conviction for weapon in penal institution." Defendant did not appeal this order.

¶ 12    Subsequently, defendant chose to represent himself in defense of the case.

¶ 13    The case was set for March 5, 2024 on discovery status and a hearing on defendant's *pro se* request for "a detention hearing." Defendant began by stating that he turned 32 years old that day and was "trying to get home to [his] family." He has not seen "medical" for his lung cancer, while in jail. He explained that he "took off the public defender" to "fight for my life myself," but he found writing difficult because he has two screws in his hand. He has two bullets in his pelvis, making it hard to walk. Defendant argued that he was not guilty of the current charges. He further argued that he should not be detained based on his criminal background as those cases were over ten years old and he was a juvenile. Defendant concluded by stating he was not a threat to the community and that he did not know the complaining witnesses. He acknowledged that he had "admitted that the gun was mine."

¶ 14    The court informed defendant that he had a right to counsel and twice asked if he wanted a lawyer. Defendant declined the offers and responded that he wanted to "get some monies to pay for my own lawyer." He also said he "should be able to fight my case around my family."

¶ 15    In response to the court's inquiry, the State, again, listed defendant's criminal background as it did at the November 1 hearing. The circuit court then stated "[w]e had a full detention hearing already back on January 9th. I don't need to hear a complete recitation of the facts again. And there was a detention hearing, original hearing, first appearance court was—or I should take that back. [Defendant] predates the [PFA] by one day, he was one of the last bond hearings. So it was a

million dollar bond but then it became no bail or—no, excuse me, detention after a detention hearing."

¶ 16   The court in ruling stated:

"One, *** you're presumed to be innocent. You're innocent. You don't have to prove yourself innocent. The State has to prove you guilty beyond a reasonable doubt at trial, right? At trial they have to do that. Right now the question is a lower burden under the clear and convincing standard.

One, has there been proof evident that you committed this crime. Doesn't say that they can prove you guilty but just under a lower burden, when I heard the facts before, there was enough that I could find that the proof is evident under the clear and convincing standard, the State could prove their case against you. Again, that is not saying that they can at trial. That is just for purposes of detention.

You are charged with a detention eligible offense, the armed robbery.

Now, the next question is whether or not you pose a danger. Based on your background and the facts of the case against you, again, I know it's hard to say when I keep talking about the facts against you because you are still presumed innocent, but just for these purposes, just for purpose of whether you're detained or not, the facts of the case and your criminal history I do find and I continue to find make you a danger to the community.

***

The next question, the last question is whether—if there is anything that can mitigate that risk of harm or take that harm away. I know you have talked about your medical condition and I am going to address that in a little bit after this detention issue, but you appear in front of me. You're not in a walker or cane, you appear to be in good health

but I'm not a doctor, so I don't know any of that. Right? Which is why we're going to address the medical issue in just a moment, but I don't find that electronic monitoring would mitigate the risk of harm to the community because that's something that could be removed. I don't find that pretrial services or anything like that can mitigate the risk of harm. So for those reasons, your detention order continues."

The court then offered to appoint the public defender and defendant declined.

¶ 17    Thereafter, the court entered a written order stating, "detention to continue."

¶ 18    In a separate order, the court directed the Cook County Department of Corrections to evaluate defendant for medical care and continued the case to March 19, 2024.

¶ 19    On that next court date, defendant appeared *pro se* and informed the court that he tried to file an appeal from the March 5 order but did not have access to a library. The circuit court then appointed the public defender to represent defendant and explained to defendant's appointed counsel that defendant had a detention hearing on March 5 and wanted to appeal that order.

¶ 20    The circuit court issued a written order stating:

"On March 5, 2024 this court denied the defendant's request to revisit the 11/1/23 detention hearing. This court found that the defendant is eligible for detention and the facts of the case establish the proof is evident and that he is a risk of harm to the community and that no *** set of conditions can mitigate the risk posed by his criminal history and the facts of this case."

¶ 21    On that same day, defendant timely appealed under Illinois Supreme Court Rule 604(h) (eff. December 7, 2023) using a form notice of appeal approved under that rule. In filling out the form notice of appeal, defendant stated that the "Date of Order Appealed: 3/19/2024" and "Date(s) of Hearing(s) Regarding Pretrial Release: 3/5/2024." Defendant set forth one ground for relief in

the notice of appeal, maintaining that he was "denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release," in that,

> "On March 5, 2024, [defendant], while being self-represented, requested that his custody status be addressed. [The circuit court] denied [defendant's] request and entered an order continuing [defendant's] detention. According to 725 ILCS 5/110-6.1(i-5), [a]t each subsequent appearance of the defendant before the court, the Judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons, or the community, based on the specific articulable facts of the case. This court erred by denying [defendant] a hearing where the specific, articulable facts of his case were addressed."

¶ 22    Defendant has filed a supporting record and reports of proceedings; defendant and the State have each filed a memorandum. Defendant, in his memorandum, argues that the circuit court erred by holding "a severely truncated hearing" where the State did not present the facts of the case, made no argument, and thus did not meet its burden at the subsequent detention hearing. Defendant further contends that the circuit court erred in applying the standards of an initial detention hearing and did not rely on the "specific articulable facts of the case" to detain defendant.

¶ 23    Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2022)), as amended by the Act. Under the Code, the requirement of posting monetary bail has been abolished in Illinois as of September 18, 2023 in favor of pretrial release on personal recognizance or with conditions of release. See 725 ILCS 5/110-1.5 (West 2022); *Rowe*, 2023 IL 129248, ¶ 52. For qualifying offenses, upon filing a verified petition requesting the denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's

pretrial release poses a real and present threat to the safety of any person or the community, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 24    If the defendant is detained pretrial, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. At each subsequent hearing, the statute provides that, the circuit court must find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent defendant's willful flight from prosecution." *Id.* (citing 725 ILCS 5/110-6.1(i-5) (West 2022); *People v. Long*, 2023 IL App (5th) 230881, ¶ 15; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36). The statute "does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required by the initial hearing." *Hongo*, 2024 IL App (1st) 232482, ¶ 21 (citing *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13). The finding required by section 110-6.1(i-5) is subject to a less demanding standard than that required at the detention hearing. *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14 ("when the trial court found that the State presented clear and convincing evidence on all three elements required by section 110.6-1(e), that finding necessarily encompassed the continued detention finding required by section 110-6.1(i-5)").

¶ 25    There is some debate among the appellate districts concerning the appropriate standard of review with respect to appeals from initial detention hearings under Rule 604(h). See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act); *People v. Morgan*, 2024

IL App (4th) 240103, ¶¶ 18-35 (discussing manifest weight of the evidence, abuse of discretion, and *de novo* standards of review and concluding abuse of discretion is the proper standard). We have used a two-tiered analysis and reviewed a circuit court's determination as to the first two propositions—whether a defendant committed a detainable offense and poses a threat—under the manifest weight standard (*People v. Rodriquez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12) and the trial court's determination that no condition or combination of conditions can mitigate the real and present threat posed by defendant under an abuse of discretion standard. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36 (explaining that the circuit court "must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat"); *People v. Reed*, 2023 IL (1st) 231834, ¶ 31 (explaining that the circuit court in coming to its determination is "called upon to weigh and balance a multitude of factors"); but see *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 138 (Ellis, J. concurring) (explaining that *de novo* is the proper standard of review where the vast majority of detention hearings do not include live testimony and are based solely on documents and oral presentations by counsel).

¶ 26    A similar dispute exists regarding whether the circuit court's decision on continued detention should be reviewed under the manifest weight or abuse of discretion standard. *People v. McCaleb*, 2024 IL App (1st) 240514-U, ¶ 20 (comparing *People v. Alcantara*, 2024 IL App (5th) 240195-U, ¶ 33 (manifest weight); with *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13 (abuse of discretion)). We conclude that consistent with the two-tiered approach for initial detention orders, a circuit court's decision on continued detention is subject to an abuse of discretion standard. *McCaleb*, 2024 IL App (1st) 240514-U, ¶ 20 (citing *Casey*, 2024 IL App (3d)

230568, ¶¶ 13). However, we would affirm the circuit court's decision that defendant should continue to be detained under either an abuse of discretion or a manifest weight standard.

¶ 27    An abuse of discretion occurs where the court's judgment is fanciful, arbitrary, or unreasonable, or where no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. In conducting this review, we will not substitute the circuit court's factual and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 28    Rule 604(h) governs appeals under the Act and provides that "the Notice of Appeal shall describe the relief requested and the grounds for the relief requested. Ill. S. Ct. R. 604(h) (eff. Sept. 18, 2023). Rule 606(d) requires a defendant to describe the grounds for the relief requested in detail. Ill. S. Ct. R. 606(d) (eff. Sept. 18, 2023); see *People v. Martin*, 2023 IL App (4th) 230826, ¶ 18 (construing the requirements of Rules 604(h) and 606(d)). " 'Although we liberally construe the contents of the notice of appeal, this court does not have authority to excuse compliance with the filing requirements of the supreme court rules governing appeals.' " *Id.* (quoting *Estate of Young v. Department of Revenue*, 316 Ill. App. 3d 366, 373 (2000)).

¶ 29    As discussed above, defendant's notice of appeal states that it is the March 19, 2024 order which is being appealed. However, the notice of appeal also raises errors as to the March 5 continued detention order and the arguments in his memorandum address the March 5 order. Construing the notice of appeal liberally, we find that defendant has appealed from both the March 5 and 19 orders. Those orders required the continued detention of defendant. However, defendant

has not raised any specific arguments on appeal as to the March 19 order and has forfeited review of that order. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 30 Here, the same circuit court judge presided over defendant's initial detention hearing and subsequent detention hearing on March 5. The reports of proceedings demonstrate that the circuit court had full knowledge of the articulable facts relating to the charges against defendant. The circuit court based its decision that defendant should continue to be detained on the proffer and the findings from defendant's initial detention hearing on November 1, 2023. Defendant never appealed from the initial detention order and the propriety of that order and its findings are not before us. The circuit court further explained on "the facts of the case and [defendant's] criminal history" that defendant was a danger and should continue to be detained.

¶ 31 The articulable facts of the case show defendant committed detainable crimes against three complaining witnesses. Defendant admitted to possessing a firearm at the time of the offenses. He pointed the firearm at the bystanders to his altercation with someone else. Defendant threatened to kill them if they did not turn over their valuables. When they complied, defendant took their money and upon seeing the police with the complaining witnesses, fled the scene. Defendant was found under a staircase where the firearm that was used in the robbery as well as United States currency were located. Defendant flaunted the law because as a convicted felon, he was prohibited from possessing the firearm, a fact which gives no assurance that he would comply with any conditions of release. Defendant's criminal history includes prior convictions involving weapons and his conviction for possessing a weapon while incarcerated is further evidence that conditions of release could not mitigate defendant's threat to safety.

¶ 32    The specific articulable facts of the case and the nature of defendant's criminal history support a decision that his continued detention was necessary because he poses a danger to the complaining witnesses and the community.

¶ 33    Defendant argues that at the March 5 hearing the State failed to satisfy its burden of setting forth the specific articulable facts of the case in order to support continued detention. However, for subsequent hearings, "the statute only requires the court to find that 'continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.' " *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13; see also *People v. Byrd*, 2024 IL App (1st) 240311-U (noting that "[a]bsent some change in circumstances or additional evidence by the defense, the State can stand on, and the court can rely on, the evidence presented by the State at the defendant's original detention hearing to justify continued detention").

¶ 34    Therefore, we conclude that the circuit court's decision to deny defendant's request for release and order that he continue to remain in custody pretrial did not constitute an abuse of discretion and was not against the manifest weight of the evidence.

¶ 35    For the foregoing reasons, we affirm the decision that defendant continue to be detained pretrial.

¶ 36    Affirmed.