2026 IL App (1st) 260500-U

SECOND DIVISION
June 16, 2026

No. 1-26-0500B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 26CR1833 |
| | ) | |
| MAURICE ELLIS, | ) | Honorable |
| | ) | Anjana M. J. Hansen |
| Defendant-Appellant. | ) | and James Murphy, |
| | ) | Judges Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the trial court's order granting the State's detention petition because the State proved by clear and convincing evidence that the proof is evident or the presumption is great that defendant committed a detainable offense; that defendant posed a real and present safety threat; and that no condition or combination of conditions could mitigate that threat.

¶ 2    Defendant, Maurice Ellis, appeals the trial court's order granting the State's verified petition for pretrial detention pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024)).

¶ 3    The record on appeal shows that defendant was arrested on January 31, 2026, and was charged with unlawful possession of a firearm by a repeat felony offender. 720 ILCS 5/24-1.7(a) (West 2024). The next day, February 1, 2026, the State filed a petition for a pretrial detention hearing, and defendant appeared before the court.

¶ 4    The court initially asked for information regarding defendant's pretrial supervision assessment (PSA), and the pretrial officer responded: "New criminal activity scale four, failure to appear scale three. PSA Score coincides with Pretrial Supervision Level Two."

¶ 5    The State then argued that the "proof is evident and the presumption is great" that defendant committed the offense of unlawful possession of a firearm by a repeat felony offender, based on the following proffer. On January 31, 2026, at about 5:15 p.m., officers stopped defendant's vehicle after observing a traffic infraction and a broken driver's side taillight. During the stop, officers smelled an odor of fresh cannabis coming from inside the vehicle. Officers asked defendant for his driver's license and proof of insurance, and defendant was unable to provide proof of insurance. Officers asked defendant if he had any weapons inside the vehicle and if he had a firearm owner's identification (FOID) card or concealed carry license (CCL). Defendant responded that he did not have a FOID card or CCL.

¶ 6    The officers believed defendant's responses were "squirmy," and they "ran the defendant's name," at which point they asked him to step out of the vehicle to conduct a narcotics search. As defendant exited the vehicle, officers observed a green leafy substance, which they suspected to be cannabis, on the driver's side floorboard. During the search, officers observed that the glove

2

compartment was locked. Defendant told the officers that he would be grateful if they could get inside the glove compartment, because a previous owner had locked it with a pin and defendant had never been able to get inside. Officers opened the glove compartment and recovered a loaded gun with an extended magazine and laser sight. In the same glove compartment, officers recovered documents containing defendant's name and address. The arrest report indicates that the documents were receipts for a city sticker and a "doctor lab prescription."

¶ 7    Officers learned that the firearm was stolen from Memphis, and that defendant had two prior felony convictions: a 2009 armed robbery conviction, for which defendant was sentenced to 10 years' imprisonment; and a 2014 armed robbery conviction, for which defendant was sentenced to 11 years' imprisonment. The State noted that defendant's criminal record also included a 2009 conviction for manufacture and delivery of a controlled substance, for which he received two years of "special probation," and a 2021 misdemeanor battery conviction.

¶ 8    Based on the above proffer, the State argued that the proof was evident or presumption great that defendant committed the charged offense. The State further argued that defendant posed a real and present threat to the safety of any person, persons, or the community because he was not forthcoming about having a firearm in the vehicle, and the firearm was found in a glove compartment that also contained documents with his name and address. The State asserted that defendant knew he could not possess a firearm because he had multiple felony convictions and he had no "lawful ability to be carrying that firearm." Finally, the State argued that no conditions short of pretrial detention could mitigate the risk defendant posed because electronic monitoring would not prevent defendant from obtaining or possessing another firearm.

¶ 9    In response, defense counsel argued that the court should deny the State's petition because the statute governing pretrial detention suggests that the court should "consider the admissibility

of the evidence." Counsel believed the facts supported "a very strong motion to suppress here down the line." Counsel stated that, although the officers claimed to observe the odor of fresh cannabis, the inventory from the search did not suggest that cannabis was found, and defendant was not charged with any cannabis-related offenses. Counsel also stated that defendant did not constructively possess the firearm because there was no suggestion that officers found a key to the glove box, and, according to defendant, officers had to "jimmy" the glove box open with a knife.

¶ 10    Counsel also argued that defendant was not dangerous because, after being discharged from parole, he had a three-year-old daughter, obtained a commercial driver's license (CDL), and earned his GED. Counsel also stated that defendant worked for UPS, attended church, and took pain medication for a back injury. Based on the above, defense counsel asked the court to deny the State's petition to detain and release defendant "on reasonable conditions."

¶ 11    In reply, the State noted that defendant not only possessed a firearm, but that the firearm had an extended magazine and a laser sight attachment. The State argued that defendant knew he should not possess any firearm, much less a firearm with features which made it even more dangerous.

¶ 12    In ruling, the court explained that the State was required "to prove three things *** by clear and convincing evidence"—that the proof was evident or presumption great that defendant committed a detention-eligible offense; that defendant posed a real and present threat to the safety of any person, persons, or the community based on the specific articulable facts of the case; and that no condition or combination of conditions could mitigate that safety risk.

¶ 13    The court stated that it took

> "into account the facts of the case, the nature of the offense, the aggravation presented, the mitigation presented, the arguments [of] both counsels, both in favor

[of] and opposed to the granting of the petition, the pretrial scores, pretrial's recommendation, the PSA, as well as the other statutory factors in aggravation and mitigation under the Pretrial Fairness Act."

¶ 14 The court explained that unlawful possession of a weapon by a repeat felony offender was a Class X felony and a detainable offense.

¶ 15 The court acknowledged that defense counsel had made "some good arguments," but based on the sworn arrest report and the State's proffer, the State met its "burden in regards to prong number one by *** clear and convincing evidence." In particular, the court noted that defendant told officers that the glove box was locked by a previous owner and that he could not get into it. The court found that the statement was "basically a lie" because when officers opened the glove box, they found the gun along with two receipts bearing defendant's name. The court reasoned that defendant "obviously *** had access" to the glove box because his documents were inside it with the gun. The court also emphasized that the gun was loaded and had a laser sight and extended magazine.

¶ 16 Regarding the second prong, the court found that defendant posed a real and present threat to the safety of any person, persons, or the community based on a "number of different factors." The court observed that the "UUW felon" and FOID statutes prohibit felons from possessing guns "because of the dangerousness component," and "because it's in the interest of public safety." The court emphasized that the gun "was loaded, had a laser, and had an extended magazine," and expressed that there was "no benign reason for any individual, let alone a felon, to possess any gun" with those features. The court also stated that defendant clearly had access to illegal guns despite his status as a "repeat felony offender."

¶ 17 Finally, the court explained that electronic monitoring and home confinement were "the most restrictive set of conditions short of detention." Those conditions, however, would not sufficiently mitigate the safety risk posed by defendant because electronic monitoring "cannot monitor whether a defendant possesses a firearm or not" because it "monitors location, it does not monitor behaviors."

¶ 18 The court also found that defendant's statement that he did not have access to the glove box showed that defendant was "lying to law enforcement," which suggested defendant's "unwillingness or *** inability to comply" with conditions of release. Finally, the court noted that electronic monitoring allows a defendant at least two days of movement per week, and the court was "not convinced that the public will be safe with any amount of movement or presence in the community" by defendant.

¶ 19 The court also expressed that it considered defendant's PSA score and the recommendation of "Pretrial Supervision Level Two," but found the PSA "was not controlling" because it "uses generic factors," lacks "nuance," and "does not consider the specific underlying facts of the case" or the "total number of convictions."

¶ 20 Thereafter, defendant secured new counsel, who filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) on February 24, 2026, and an amended motion on February 26, 2026. Counsel argued that there was a "change in circumstances" after the court's initial detention hearing, because counsel had since reviewed discovery, the body-worn camera footage, and defendant's background.

¶ 21 Counsel argued the State had failed to prove defendant knowingly possessed the firearm because it was not known "how long the weapon had been stored in the locked glove compartment, whether anyone else had access to the vehicle, and when the recovery of the weapon went beyond

the scope of the officer's search." Counsel argued that the officers did not mention noticing an odor of cannabis on the body-worn camera footage, and the officers stated on the footage that the interior of the vehicle "smelled good." Counsel also asserted that there was "no evidence pointing to whether [defendant] knew that a firearm was stored in the locked glove box of the vehicle he was driving," and that the body-worn camera footage also suggested that defendant told officers that his "girlfriend is another individual who uses the vehicle." Counsel argued that because

> "officers never saw [defendant] holding or carrying a gun, the gun was inaccessible and not visible to the officers, and there is another individual whom [*sic*] has had access to the vehicle, the State has failed to prove by clear and convincing evidence that [defendant] had unlawful possession over the weapon recovered from inside the locked glove box in the vehicle."

¶ 22   Counsel further argued that defendant was not dangerous because the charge was "not of a violent nature," and his prior felony convictions were over 10 years old. Counsel stated that defendant had a daughter, had a CDL, was employed, attended church, and took medication for a back injury. Counsel further asserted that defendant was "fully compliant with officers during the entirety of the stop and prior to his arrest," and that he did not "attempt to flee or evade arrest." Counsel noted that defendant's PSA score corresponded to "Pretrial Supervision Level Two," and stated that he if he were released with conditions, he would "have no issues in being fully compliant with such conditions."

¶ 23   Finally, counsel argued electronic monitoring or home detention could mitigate any risk posed by defendant, and that the State's argument that electronic monitoring would not keep defendant from possessing weapons was "generic, unsubstantiated, and wholly reliant on the allegations being made in this case." Counsel contended that defendant's "demonstrated

compliance with the officers on scene exhibits that he is capable of complying with any and all court orders imposed by" the court.

¶ 24     Defendant's motion for relief was heard on March 17, 2026. The State summarized the evidence in the case consistent with its proffer from the prior hearing and argued that defendant should remain detained.

¶ 25     Counsel argued there was a "change in circumstances" because counsel had since been able to review the body-worn camera footage, which showed that defendant had a valid CDL, that officers found no cannabis, and that the glove box was locked. Counsel acknowledged that, after looking on the floor of the vehicle, officers "pick[ed] up *** little buds" and said, "this is the cannabis," but argued that there was "no way" the officers "smelled this small bud" shown on the footage.

¶ 26     Counsel also argued that there were "issues with the searches and there is a warrant requirement." Counsel stated that defendant was in handcuffs and "in custody" at the time when officers began asking him questions about the glove box, and that there is "an argument that they should have read him his *Miranda* [rights] at that time."

¶ 27     Regarding defendant's dangerousness, counsel acknowledged that defendant "has a background," but stated that the charged offense was "not inherently danger[ous]," and defendant was "compliant" with the officers during the encounter.

¶ 28     Finally, counsel asserted that, even if the court found that defendant posed a danger, "there are a combination of conditions that can mitigate that danger." Counsel tendered mitigation evidence, including various certificates, tax and employment documents, and letters of support. Counsel further stated that defendant had one child and another who "will be here soon," and that he provided support and cared for his nieces and nephews.

¶ 29    In ruling, the court initially explained that, although the parties had made arguments in terms of whether there had been a change in circumstances since the initial hearing, the court believed that such a showing was not necessary at a hearing on a Rule 604(h) motion for relief. The court explicitly stated that it had reviewed the written detention order, the transcript from the prior hearing, and the mitigation evidence submitted by the defense, including character letters. The court acknowledged that defendant "probably ha[d] a motion with regards to your arguments about a bad stop and *Miranda*," but at this point, the court was required to consider "whether the proof is evident or the presumption great that the defendant committed an eligible offense. And at the end of the day, the defendant is the only one in the car." The court found it significant that defendant claimed he did not have access to the glove box, and "yet when it's opened, there's two receipts in it along with the weapon." The court stated that defendant "clearly knew" the gun was inside the glove compartment and was trying to avoid taking responsibility when the officers eventually recovered it.

¶ 30    The court further found that defendant posed a real and present threat because he was a "repeat felony offender. He's not supposed to have a gun. And yet he still did, riding around in a car, and indicating that he didn't know how to open a glove box where the gun was [found]."

¶ 31    Finally, the court found that electronic monitoring and home confinement would not mitigate the threat because they do "not monitor behavior," they "monitor geography. And with someone who is already a convicted felony offender who isn't supposed to have a gun and had a gun anyway," such conditions would not "deter him from doing the same thing moving forward. So at this time, the defendant will stay detained."

¶ 32    Defendant filed a notice of appeal on March 17, 2026.

¶ 33    In this court, defendant contends that the court erred in ordering him to be detained pretrial because the State failed to prove by clear and convincing evidence that the proof is evident or presumption great that defendant committed the offense of possession of a firearm by a repeat felony offender; that he poses a real and present threat to the safety of a person, persons, or the community; and that there is no condition or combination of conditions that can mitigate that threat.

¶ 34    Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or Pretrial Fairness Act (Act) amended the Code by "abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 20. "Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention by clear and convincing evidence on the State." *People v. Stock*, 2023 IL App (1st) 231753, ¶ 11; 725 ILCS 5/110-6.1(e) (West 2024).

¶ 35    For the State to obtain an initial detention order, the Act requires three showings by "clear and convincing" evidence:

> "(1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the

community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022))." *Hongo*, 2024 IL App (1st) 232482, ¶ 20.

¶ 36　The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. 725 ILCS 5/110-6.1(f)(2) (West 2024). Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because no live testimony was presented at defendant's detention hearings, we will employ a *de novo* standard here.

¶ 37　In this case, the State charged defendant with unlawful possession of a firearm by a repeat felony offender (720 ILCS 5/24-1.7(a) (West 2024)), a detainable offense (725 ILCS 5/110-6.1(a)(6)(D) (West 2024)). A person is guilty of the offense "if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination" of certain offenses. 720 ILCS 5/24-1.7(a) (West 2024).

¶ 38　Defendant does not dispute that he was convicted of the requisite prior offenses—2009 and 2014 convictions for armed robbery. Rather, defendant argues that there was "no evidence within the record" to show that he "unlawfully possessed the firearm" recovered from the locked glove compartment. Defendant contends that to "establish that [defendant] had possession over the weapon recovered, the State must prove constructive possession" based on defendant's "knowledge of the presence of the weapon" and defendant's "immediate and exclusive control over the area where the weapon was found." Defendant contends that there was no evidence to

establish how long the firearm was in the glove compartment, or that defendant knew that it was there.

¶ 39     "[C]onstructive possession of a firearm may be shown where the person has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found." *People v. Brown*, 2020 IL 124100, ¶ 11. A person may have constructive possession of contraband even if "others have access to the area where the contraband was recovered." *People v. Spencer*, 2016 IL App (1st) 151254, ¶ 25. "Constructive possession is often proven entirely by circumstantial evidence." *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23.

¶ 40     Initially, we note that at the detention stage, the State is not required to prove defendant's guilt of the charged offense beyond a reasonable doubt. See *People v. Luna*, 2024 IL App (2d) 230568, ¶ 9. Here, the State's proffer established that defendant was the driver and sole occupant of a vehicle, and officers recovered the loaded firearm from the locked glove box along with documents bearing defendant's name and address. Although defendant claimed he could not access the glove box because a prior owner locked it, the court found that explanation was contradicted by the fact that his documents were found inside the same locked compartment as the gun. Moreover, as the court explained, defendant's statement suggests that defendant "clearly knew" that the firearm was inside the glove compartment and that he was trying to avoid taking responsibility for the gun when it was eventually recovered. See *Maldonado*, 2015 IL App (1st) 131874, ¶ 40 (a defendant's knowledge "may be established by evidence of the defendant's acts, declarations or conduct from which the inference may be fairly drawn that he knew of the existence of the contraband where it was found"). Based on the State's proffer, we conclude that the State met its burden to show that the proof is evident or the presumption great that defendant committed

the detainable offense of unlawful possession of a firearm by a repeat felony offender. See *People v. Shaw*, 2024 IL App (1st) 232083-U, ¶ 17 (affirming the finding that there was clear and convincing evidence that defendant constructively possessed a firearm where "the State's proffer *** established that the firearm was found in the vehicle's glove box. [The defendant] was the owner of the vehicle and at the time of the arrest, the only other occupant was his four-year-old son.")

¶ 41    Defendant, however, also contends that the State failed to meet its burden to show that he committed the charged offense because the officers "went beyond the scope of the search" in opening the locked glove compartment, and the officers' allegation that they observed an "odor of fresh cannabis" was used to justify a "fishing expedition."

¶ 42    Defendant's argument "rests on an assumption not found in the Code: that the court may consider only admissible evidence when ordering defendants detained." *People v. Jones*, 2024 IL App (1st) 240367-U, ¶ 20; see also *People v. Parker*, 2026 IL App (1st) 260240-U, ¶ 22 (the Code does not "require the State [to] use only admissible evidence in its proffer"). To the contrary, the statute provides that the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing," and that a defendant "may not move to suppress evidence" at a detention hearing. 725 ILCS 5/110-6.1(f)(5), (6) (West 2024). However, "evidence that proof of the charged crime may have been the result of an unlawful search or seizure, or both, or through improper interrogation, is relevant in assessing the weight of the evidence against the defendant." 725 ILCS 5/110-6.1(f)(6) (West 2024). This court has explained that such a statutory framework "makes sense as a practical matter" because detention hearings are often held at an "early stage of the prosecution, [when] the parties likely have not completed discovery, and the investigation may not even be complete." *People v. Wright*, 2024 IL

13

App (4th) 240187, ¶ 34. In such circumstances, a court "cannot be expected to rule on complicated evidentiary questions as part of a detention hearing." *Id.*

¶ 43    At a detention hearing, a court is tasked with "answering questions such as whether the proof is evident or the presumption is great that defendant *committed* the crime in question; not whether he will likely be found guilty at trial." (Emphasis in original) *People v. Frye*, 2025 IL App (2d) 250381-U, ¶ 14. As the trial court recognized, defendant may have an argument for a future motion to suppress, which can be considered more fully by the trial court at the appropriate time. However, based on the evidence that was before the trial court, we conclude that the State met its burden in establishing that the proof was evident or presumption great that defendant committed the charged offense.

¶ 44    Defendant next contends that the State failed to prove that he poses a real and present threat to the safety of a person, persons, or the community. Defendant argues that the evidence shows he is a father and provider to his nieces and nephews, that he is "gainfully employed" at UPS, and that he started a remodeling company. Defendant contends that his criminal convictions are "over ten years old and are not representative of [his] character." Defendant also asserts that he was compliant and respectful toward the officers during the encounter and did not attempt to flee from the scene or evade the officers.

¶ 45    The statute provides a nonexhaustive list of factors a court should consider when determining whether a defendant poses a real and present threat to the safety of any individual, individuals, or the community. These include the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense"; the "history and characteristics of the defendant," including the defendant's "prior criminal history"; and "[w]hether the defendant is known to possess or have access to any weapon

14

or weapons." 725 ILCS 5/110-6.1(g) (West 2024). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15; 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 46    Based on our review of the statutory factors, we find that the State established by clear and convincing evidence that defendant poses a safety threat. The nature and circumstances of the offense charged in this case suggest that defendant, a repeat felony offender, was driving a vehicle on a public roadway while possessing a loaded gun with an extended magazine and laser sight.

¶ 47    This court has explained that the offense of unlawful possession of a firearm by a repeat felony offender, previously termed "armed habitual criminal" (see Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.7)), is specifically aimed at "the danger associated with repeat felons having firearms" (*People v. Martin*, 2018 IL App (1st) 152249, ¶ 23). Our legislature has pronounced that, "in order to promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms." 430 ILCS 65/1 (West 2024). Defendant, as a convicted felon, is explicitly prohibited from possessing a firearm, and accordingly, his possession of a firearm "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28 (citing 430 ILCS 65/1 (West 2022)).

¶ 48    Moreover, the firearm that defendant is charged with possessing was reported to have been stolen, and it was loaded and equipped with an extended magazine and laser sight—features which increase the dangerousness of that firearm. See *People v. Salley*, 2025 IL App (1st) 242240-U, ¶ 23 ("It wasn't just a gun, it was a gun with a laser sight and a magazine."); *Shaw*, 2024 IL App (1st) 232083-U, ¶ 20 (finding that defendant posed a safety risk where the firearm he was charged

with possessing "had a laser sight with an extended magazine"). In these circumstances, we find that the State established by clear and convincing evidence that defendant poses a real and present threat to the safety of a person, persons or the community.

¶ 49    Finally, defendant contends that the State failed to prove that there is no condition or combination of conditions that can mitigate any safety threat he poses. Defendant asserts that the court's conclusion that electronic monitoring would not stop him from possessing another firearm, and that electronic monitoring "monitors locations, [and] not behaviors," are " 'sweeping generalizations' " which are "insufficient to 'satisfy the statutory requirements that the State prove that no set of conditions can mitigate' any alleged threat [defendant] is said to pose."

¶ 50    Defendant relies on *People v. Lopez*, 2025 IL App (2d) 240709, for his contention that "sweeping generalizations" are insufficient to support a finding that the State met its burden on the third prong. Defendant's reliance on *Lopez* is misplaced.

¶ 51    In *Lopez*, the 18-year-old defendant was charged with illegal possession of a firearm without a FOID card, and after a hearing, the trial court ordered defendant to be released on electronic monitoring. The State appealed, and the appellate court affirmed, agreeing that the State had failed to show that there were no conditions of release that could mitigate the defendant's safety threat to the public. *Id.* ¶ 20. In doing so, the court noted that the defendant had no prior criminal background, lived at home with his family, was not affiliated with any gang, and "there was no evidence that the defendant ever used a firearm or had a history of violent behavior." *Id.* The court explained that "[s]weeping generalizations, such as 'defendants don't follow orders' or that conditions of release are loosely monitored do not satisfy the statutory requirements that the State prove that no set of conditions can mitigate a defendant's real and present threat." *Id.* ¶ 21.

¶ 52    Here, however, the court did not rely on "generalizations" to find that no conditions could

mitigate the safety threat posed by defendant. Rather, the court based its decision on an individualized consideration of proper statutory factors, including the nature and circumstances of the offense and the history and characteristics of defendant. See 725 ILCS 5/110-5(a) (West 2024).

¶ 53    Here, defendant is a repeat felony offender with two prior armed robbery convictions, and the State's proffer showed that he possessed a loaded firearm with an extended magazine and laser sight. As the trial court recognized, the State's proffer also suggests that defendant "lie[d]" to police officers when he claimed he was unable to access the locked glove box, because receipts bearing defendant's name were found in the glove box with the gun. The circumstances of the offense and defendant's prior criminal background suggest that conditions short of detention would not adequately mitigate the safety threat defendant poses to the public. See *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 29 (the defendant's "criminal history, particularly prior felonies involving firearms, *** demonstrated his dangerousness and history of noncompliance and disregard for conditions or restrictions"); *People v. Suggs*, 2024 IL App (1st) 240723-U, ¶ 31 ("Defendant flaunted the law because as a convicted felon, he was prohibited from possessing the firearm, a fact which gives no assurance that he would comply with any conditions of release.").

¶ 54    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 55    Affirmed.