2024 IL App (1st) 240168-U

FIRST DISTRICT,
FIRST DIVISION
April 29, 2024

No. 1-24-0168B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 22110666801 |
| | ) | |
| CAMERON SKELTON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Barbara Dawkins, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant Cameron Skelton appeals from the trial court's order denying him pretrial release pursuant to the amendments to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq.* (West 2022)), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or Pretrial Fairness Act (Act). See Pub. Act 101-652 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4          Defendant was arrested on January 19, 2024, and charged with the offense of armed habitual criminal (AHC) relating to an incident that occurred on April 25, 2022. 720 ILCS 5/24-1.7 (West 2022). The State filed a petition for pretrial detention on January 22, 2024. A pretrial detention hearing was held. According to the State's proffer, on April 8, 2022, "representatives from the Sheriff's police" called defendant to see if he was "willing to consent for Aaron Faulkner to live at [his] house" while Faulkner was on electronic monitoring (EM). Since defendant was in Miami, his uncle met with investigators at defendant's home. The investigators spoke to defendant over Facetime. Defendant gave his "verbal consent" to allow Faulkner to use his home as a host site while on EM, which was captured on body-worn camera footage. The investigators verified defendant's identity and address with a copy of his ID and a ComEd bill.

¶ 5          On April 25, 2022, investigators responded to defendant's home because Faulkner was in violation of his EM conditions. Defendant answered the door and led them to the basement to speak to Faulkner. The investigators sat Faulkner on a couch and searched under the cushions to "ensure there was no weapon." They found three loaded firearms.

¶ 6          Defendant "became agitated and began charging toward the investigator." He refused to comply with commands to "back off" and place his hands behind his back, and instead, "ran towards his bedroom." The investigators chased him into the bedroom, where there "were two additional loaded firearms." Defendant "refused verbal commands to stop" and "fled the residence with officers chasing him." Defendant "made good his escape." "Numerous" ammunition magazines and a ComEd bill in defendant's name were also recovered from the residence. A warrant for defendant's arrest was issued on that same date.

¶ 7        Defendant was not arrested until January 19, 2024, when he was pulled over for driving a car with a suspended registration.[1] The police recovered a loaded firearm behind the driver's seat and a magazine in the center console. Defendant was the sole occupant of the vehicle.

¶ 8        Defendant has four prior felony convictions, including: a 1998 conviction for attempted murder, for which he was sentenced to 10 years' imprisonment in the Illinois Department of Corrections (IDOC); a 2005 conviction for possession of a controlled substance, for which he received two years in the IDOC; a 2009 conviction for unlawful use of a weapon by a felon, for which he received three years in the IDOC; and a 2014 conviction for possession of a controlled substance, for which he successfully completed probation. Defendant also failed to appear for a "domestic case," which was dismissed in 2021.

¶ 9        The State argued that defendant posed a real and present threat to the safety of the community, based on the specific articulable facts of the case. The State also verbally amended its petition, seeking to detain defendant "on the basis of willful flight."

¶ 10        Defense counsel maintained that while defendant "frequented" the residence, it "wasn't his house" and "wasn't in his name." Additionally, the vehicle that he was driving when he was pulled over was "not his vehicle." After the officers activated their lights, the car "became inoperable," causing defendant to run a red light and crash. He was not evading police, was unaware that there was a warrant issued for his arrest, and went "into custody without incident."

¶ 11        Counsel further asserted that defendant is 44 years old and went "may years *** without any run-ins with the police" since his last conviction in 2014. Defendant has a bachelor's degree, has owned his own business since 2016, takes care of his five children, and is a vendor for

---

[1] The State's petition for pretrial detention in the case related to the traffic stop was denied in a separate proceeding before a different trial judge. In that case, the trial court considered the facts relating to the April 25, 2022 incident "in aggravation as it relates to the traffic stop."

Chicago Public Schools. Counsel requested that the trial court place defendant on any "monitoring services that the Court finds fit," which would "secure his presence [at] each and every court date."

¶ 12     The State responded that no condition or combination of conditions could mitigate the threat defendant posed to the safety of the community or his risk of willful flight because when he was confronted by investigators, he "[ran]out of there" and "continue[d] to run until he [was] arrested in a traffic stop with, yet, another gun." The State argued that EM "can be walked away from, can be cut off, guns can be possessed, people can be at risk." There are also "two days required by statute that this [d]efendant would have access to the community and that is a safety concern for the community at large."

¶ 13     The trial court found that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed AHC, which is a detainable offense under the Act. Given defendant's prior criminal history, the State had to show that defendant was "in possession of a firearm." The State provided evidence "to at least tie [defendant] to the residence" because he agreed to let Faulkner stay there, mail with his name and address was recovered, and he was present when the premises check occurred. Additionally, when confronted by investigators, defendant "ran *** to [his] place of safety and seclusion within [his] home, [his] bedroom," where two additional guns were recovered.

¶ 14     In making its dangerousness determination, the trial court considered the facts in "significant mitigation," including, defendant's "moderate" Pretrial Services Assessment (PSA) scores of 4 for new criminal activity, 3 for failure to appear, and a "corresponding monitoring level of 2." The court also considered defendant's age, business ownership, and "strong ties to the community." However, the court balanced these mitigation factors with the fact that

"multiple firearms" were recovered from defendant's residence, two of which were "recovered from a bedroom that is being attributed to [him]." Defendant also has four prior felony convictions, and this is his "fourth allegation of *** being in possession of illegal firearms." Moreover, defendant was combative, fled from police, and was not apprehended "until two years later when [he was] found to be in possession of another firearm." Weighing these factors, the court concluded that defendant posed a real and present threat to the safety of the community, based on the specific articulable facts of the case.

¶ 15    The trial court also found that no condition or combination of conditions could mitigate that threat, considering that defendant is a "convicted felon found to be in possession of multiple firearms in [his] residence," was combative, fled from the police, and was arrested while in possession of another firearm. The court found pretrial supervision to be inadequate, as it would leave defendant "unmonitored" except for phone calls or in-person visits. The court also rejected home confinement or curfew because they "would not give a timely reporting to the Court of any violations," which "would not suffice" for someone who "has been found to be a danger to the community." Under EM, defendant would be unmonitored for two days, as required by statute, which would be inappropriate for defendant, who has a "violent conviction for attempt murder," "another gun conviction," was in possession of multiple firearms, and fled from the police.

¶ 16    The trial court also found that no less restrictive conditions could prevent defendant's willful flight from prosecution where he was combative toward investigators, ran to his bedroom, "escaped from the residence where it was clear *** that [he was] to be detained," and was "in the wind for two years."

¶ 17                                ANALYSIS

¶ 18      Defendant argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offense of AHC; that he posed a real and present threat to the safety of the community; and that no condition or combination of conditions could mitigate that threat or his willful flight.

¶ 19      Pursuant to article 110 of the Code, as amended, "[a]ll defendants shall be presumed eligible for pretrial release" and pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-6.1(e) (West 2022). After filing a timely verified petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that: the proof is evident or the presumption great that defendant has committed a qualifying offense; defendant's pretrial release poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or that defendant has a high likelihood of willful flight to avoid prosecution; and less restrictive conditions would not mitigate the real and present threat to the safety of any person or the community and/or prevent defendant's willful flight. 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 20      Factors that the trial court may consider in making a "dangerousness" determination, *i.e.*, that the defendant poses a real and present threat to any person or the community (725 ILCS 5/110-6.1(g) (West 2022)), include, but are not limited, to (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person or persons whose safety the defendant is believed to pose a threat, and the nature of the threat; (4) any statements made by, or attributed to, the defendant; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining

witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g) (West 2022).

¶ 21        If the trial court finds the State proved a threat to the safety of any person or the community, the court must then determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022); see also 725 ILCS 5/110-10 (a), (b) (West 2022) (listing both mandatory and permissible conditions of pretrial release). In making this determination, the trial court "shall" consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[2] (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022). No singular factor is dispositive. *Id.* "The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2022).

---

[2] The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

¶ 22    We review the trial court's ultimate determination regarding pretrial release for an abuse of discretion (*People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9)), while we review the trial court's factual findings under the manifest weight of the evidence standard (*People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8).[3] See also *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only when the court's judgment is fanciful, arbitrary, or unreasonable, or when no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 23    Based on our review of the record, we cannot say that the trial court abused its discretion in denying defendant pretrial release. The State's proffer proved by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed AHC, where: defendant allowed Faulkner to live at the residence; defendant was present and opened the door to the residence during the premises check; a ComEd bill bearing defendant's name and address was found on the premises; and two loaded firearms were recovered from the bedroom that defendant fled to when confronted by investigators. See 720 ILCS 5/24-1.7 (West 2022) (an individual commits the offense of AHC by possessing a firearm after having been convicted of 2 or more qualifying offenses); *People v. Brooks*, 2023 IL App (1st) 200345, ¶¶ 39, 41 (possession can be actual or constructive and "[h]abitation in the premises where the contraband is

---

[3] There has been considerable disagreement regarding which standard of review applies to pretrial detention orders. See, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying only an abuse of discretion standard); *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (applying exclusively a manifest weight standard); *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 34 (reviewing the denial of pretrial release *de novo*, but findings of historical fact for manifest error). Our conclusion would be the same under any of these standards.

discovered is sufficient to constitute constructive possession"). Defendant takes issue with the fact that the State "did not provide the address of the residence, where the bill was from, or any details relating to this alleged bill." However, at this stage, the State need only proceed by proffer "based upon reliable information" (725 ILCS 5/110-6.1 (f)(2) (West 2022)) and does not need to prove defendant's guilt beyond a reasonable doubt (*People v. Clay*, 361 Ill. App. 3d 310, 322 (2005) (the "clear and convincing" standard of proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt)).

¶ 24    In finding that defendant posed a real and present threat to the safety of the community, the trial court properly considered factors in "significant mitigation," including defendant's age, ties to the community, and "moderate" PSA score. However, the court found that these factors were outweighed by defendant's possession of multiple loaded firearms, his four prior felony convictions (including attempted murder and unlawful use of a weapon by a felon), and the fact that he was arrested while in possession of another loaded firearm. We cannot say that the trial court's conclusion was against the manifest weight of the evidence.

¶ 25    Nor was the trial court's finding that no condition or combination of conditions could mitigate defendant's real and present threat to safety of the community or his willful flight against the manifest weight of the evidence. The trial court concluded that less restrictive conditions would not sufficiently monitor defendant. This was not "unreasonable, arbitrary, or not based on the evidence presented" (*Deleon*, 227 Ill. 2d at 332), considering defendant's possession of multiple loaded firearm; his past criminal history; his aggression toward, and flight from, the investigators when it was "clear *** that [he was] to be detained"; and the fact that he was "in the wind for two years," and was arrested in possession of another loaded firearm.

¶ 26　　Defendant's reliance on *People v. Stock*, 2023 IL App (1st) 231753, is misplaced. There, the State presented "no evidence" regarding whether a "condition or combination of conditions *** can mitigate the real and present threat to the safety of any person or the community" and the trial court's written and oral rulings "did not contain any such reasoning" as to this finding. *Id.* ¶¶ 15-17, 20. Whereas, here, as outlined above, the State argued, and the trial court thoroughly explained, why no other condition or combination of conditions would mitigate the threat of safety to the community or defendant's willful flight.

¶ 27　　Finally, defendant argues that the trial court "erred in its determination that there were no conditions that could ensure [his] appearance for later hearings or prevent [him] from being charged with a subsequent felony or Class A Misdemeanor." However, the trial court did not make such a determination in this case, as this standard is only applicable to a petition to revoke or modify pretrial release under section 110-6 of the Code. See 725 ILCS 5/110-6(a) (West 2022).

¶ 28　　　　　　　　　　　　　　　　CONCLUSION

¶ 29　　For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 30　　Affirmed.