2024 IL App (1st) 241102-U

FIFTH DIVISION
October 21, 2024

No. 1-24-1102B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 24110119401 24 CR 0307301 |
| RASHAD JONES, | ) ) ) | Honorable Susana Ortiz and |
| Defendant-Appellant. | ) ) ) | Alfredo Maldonado, Judges Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The pretrial detention of defendant is affirmed where the circuit court's finding that the defendant posed a real and present threat to the safety of any person or persons or the community was not against the manifest weight of the evidence and its conclusion that no condition or combination of conditions would mitigate that risk was not an abuse of discretion.

¶ 2    Defendant Rashad Jones appeals from the circuit court's order detaining him before trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104,

§ 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Mr. Jones argues that the court erred in determining both that he posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case and that no condition or combination of conditions would mitigate the threat. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Jones was charged by the State as an armed habitual criminal (720 ILCS 5/24-1.7 (West 2022)), a Class X felony. Being an armed habitual criminal is a detainable offense. 725 ILCS 5/110-1.6(a)(6)(D) (West 2022). The charge stemmed from an incident on February 27, 2024, in which Mr. Jones was alleged to have been observed with a firearm, and then fled from the observing police officers, discarding the firearm as he fled.

¶ 5      On February 28, 2024, the State petitioned for Mr. Jones to be detained until trial pursuant to section 110-6.1 of the Code (*id.* § 110-6.1). A hearing on the State's petition was held before Judge Susana Ortiz the same day. Mr. Jones was present at the hearing and represented by counsel.

¶ 6      Pretrial services noted that Mr. Jones's score for new criminal activity was four and failure to appear was three. They also said, "PSA coincides with pretrial supervision level 3."

¶ 7      The State argued at the hearing that "the proof [wa]s evident and presumption great that the defendant ha[d] committed the eligible offense of armed habitual criminal." As a proffer, the State represented that on February 27, 2023, police officers on routine patrol "heard an unknown individual yell 12, which [the] officers kn[e]w to be an alert that law enforcement [wa]s in the area." The State explained, "[T]hat callout normally allows individuals to conceal illegal activity before officers approach." The State said that Mr. Jones "had been standing in a group of five or six individuals on 4252 West Wilcox Street," and that after the callout, he "left the group and began to walk eastbound on Wilcox." The officers then approached Mr. Jones, who "suddenly

stopped and began to change directions and tried to conceal himself from the officers' view." Mr. Jones was wearing "a full length coat with an open front," and as he moved, the officers "observed a black rectangular object in [his] right hip waistband, which appeared to be the slide of a handgun." Based on their observations, the officers believed Mr. Jones was armed so they left their car to investigate.

¶ 8    When the officers got out of their car, Mr. Jones fled. The officers pursued him, and during the flight, observed him reaching for and then producing a "black handgun from his right side." The officers ordered Mr. Jones to drop the weapon, and he "discarded the firearm at approximately 4238 West Wilcox." The officers recovered the gun, "a semiautomatic 9 millimeter Beretta, which was fully loaded with a round in the chamber." The officers continued to pursue Mr. Jones, who eventually fell and was detained. The officers learned his name and determined he did not have a Firearm Owner's Identification (FOID) card or a concealed carry license (CCL).

¶ 9    The State said that Mr. Jones had six prior felonies including convictions for residential burglary in 2013, for which he received 24 months of probation; a driving violation in 2016; aggravated battery in a public way in 2017, for which he received 30 months in prison; possession of a fraudulent identification card in 2018, for which he received conditional discharge; perjury in 2021 for which he received two years in prison; aggravated fleeing and eluding in 2023, for which he received one year in prison; and aggravated unlawful use of a weapon (AUUW) in 2023, for which he was currently on parole.

¶ 10   The State argued that Mr. Jones "pose[d] a real and present threat to the safety of any person or persons in the community based on the articulable facts of this case" because he "was on the streets of Chicago with a loaded firearm and, in fact, ran from the police, threw the firearm, and then finally was apprehended." The State also argued there was "no condition or combination

3

of conditions" to mitigate the risk, because he was on parole for the AUUW conviction and had also been convicted of aggravated fleeing and eluding in 2023.

¶ 11    Defense counsel argued that the State would not be able to prove that Mr. Jones had committed the charged offense because, in the defense's view, "the police did not have reasonable suspicion or probable cause to even approach Mr. Jones" as they had no information about someone of his description or anyone having a firearm. And "[o]nce the police did approach Mr. Jones and they observed what they thought was the slide of a firearm, they had no reason to believe that Mr. Jones did not legally possess that firearm."

¶ 12    As to the "safety prong," defense counsel noted that there was "no allegation of brandishing the firearm in any way, of threatening anyone with a firearm or even essentially pointing the firearm whatsoever." Defense counsel also pointed out that Mr. Jone's had a "no new violence flag in his PSA" and "his prior criminal history that could be categorized as violent [wa]s more remote in time." Defense counsel argued that conditions, other than incarceration, could address concerns about safety or Mr. Jones appearing in court. Counsel explained that Mr. Jones was a life-long Cook County resident who was presently residing with his grandmother; he had one child who lived out of state but for whom he was financially responsible; he graduated from high school and started attending college at "SIU pursuing a degree in psychology" until he withdrew to care for his father who was suffering from ulcers; he had been employed full-time as a general manager at Cajun Boil and Bar in Oak Park, Illinois, for the past two years; and his father as well as a coworker and friends were in court supporting him. Counsel argued that "based on his history and his characteristics," the court could set conditions that would allow him "to be released from custody and continue working while his case proceeds."

¶ 13    In rebuttal, as to safety, the State again noted that Mr. Jones was "on the streets of Chicago

4

in a large group of people with a firearm that was loaded with a round in the chamber," that he threw the firearm, and that it "could have potentially went off and injured innocent parties in the area." And as to conditions, the State said that Mr. Jones "was just convicted of two very serious crimes, agg[ravated] fleeing and eluding." The State explained that the aggravated fleeing and eluding conviction involved Mr. Jones as the driver of a vehicle, with a passenger, running "seven stop signs as well as some other traffic control devices." In addition, according to the State, Mr. Jones had been placed on parole on October 26, 2023.

¶ 14    In considering whether the State had shown by clear and convincing evidence that the proof was evident and the presumption great that Mr. Jones committed the offense charged, the court summarized the State's proffer and acknowledged defense counsel's argument that the police had no basis for approaching Mr. Jones. The court also noted Mr. Jones's criminal history. The court found the State met its burden because the officers personally observed Mr. Jones in possession of a loaded firearm, "[t]here was a significant amount of flight," and Mr. Jones discarded the loaded handgun, which the police then recovered. Coupled with his criminal history, he qualified as an armed habitual criminal.

¶ 15    The court then found that Mr. Jones "d[id] constitute a clear and present danger to the community," noting that he had been on a residential street, engaged in a "significant amount of flight," and tossed a loaded firearm. The court said that "[t]he pursuit itself can create a danger to the community or anyone in the vicinity" and that Mr. Jones also created a danger when he reached for his firearm during the interaction with the police. The court also noted that Mr. Jones was "currently on parole for a weapons offense" and that he had not "arrived at five months yet, and here he [wa]s allegedly in possession of another firearm." The court said that the legislature enacted minimum sentences for the armed habitual criminal offense "to deter felons from being in

possession of firearms as the legislature has concluded that felons in possession of firearms constitute a threat to the health, safety, and welfare of the community." It also noted that "[a] firearm is intended to do nothing other than inflict death or great bodily harm."

¶ 16    The court acknowledged Mr. Jones's mitigation but did not agree with defense counsel that "either house arrest or electronic monitoring would suffice." The court noted that Mr. Jones was on parole, that electronic monitoring was unsupervised, and that Mr. Jones had shown his "willingness and ability to obtain illegal firearms." The court concluded that "the only place that the community will be safe from his ability to continue to obtain firearms would be to detain him in the Cook County Department of Corrections."

¶ 17    The court granted the State's petition and, in a written order consistent with its oral findings filed the same day, ordered Mr. Jones detained until trial.

¶ 18    On May 9, 2024, Mr. Jones filed a motion for relief as a prerequisite to appeal under Illinois Supreme Court Rule 604(h)(2) (eff. April 15, 2024), and the following day filed an amended motion for relief. In his amended motion, Mr. Jones argued that the court should not have granted the State's petition for pretrial detention because it failed to meet its burden of proving that he posed a "real and present threat to the safety of any person or persons in the community" and that "no condition or combination of conditions c[ould] mitigate the real and present threat." He argued that the court "should have taken further consideration of the significant community ties of [Mr.] Jones, which demonstrate[d] that he is not a danger." In addition, Mr. Jones argued that this case was indistinguishable from *People v. Martinez*, 2024 IL App (1st) 240241-U—where we held that evidence of a charged nonviolent gun possession offense and the defendant's status as a parolee were insufficient to establish dangerousness. Mr. Jones attached to his motion letters of support from a coworker and family.

¶ 19    At the hearing on the motion, held before Judge Alfredo Maldonado on May 10, 2024, defense counsel relied on *Martinez* to ask for Mr. Jones's release, arguing that like the defendant in *Martinez*, Mr. Jones also had a gun possession case, with no allegations that he was using the gun or committing any violence, he was working and had a job available to him, and there was no evidence that Mr. Jones "ha[d] engaged in any threatening or violent behavior." In response, the State again summarized its proffer and Mr. Jones's criminal history including the fact that, at the time of this alleged offense, Mr. Jones was on parole for both AUUW and aggravated fleeing and eluding.

¶ 20    The court indicated it was familiar with the *Martinez* decision and said that although it did not think being an armed habitual criminal was "a per se violent act," it was also "not simply a mere possessory offense. By definition, the legislature saw possession of a weapon by a felon as a serious crime. Someone with Mr. Jones'[s] background, the legislature has elevated that offense to even more of a serious crime."

¶ 21    Judge Maldonado adopted the written findings Judge Ortiz had made on February 28, 2024, and concluded that "under the clear and convincing standard *** Mr. Jones pose[d] a risk of harm to the community based on his criminal history"—specifically noting that the offense "allegedly occurred while he was on parole" which "[wa]s even further evidence" that he posed a risk. The court also found that no condition or combination of conditions would mitigate the risk Mr. Jones posed. The court noted that Mr. Jones was no longer on parole, "so that level of supervision [wa]s no longer available." The court also said that it "could order Pretrial Services," which was "similar to parole," but found that was not appropriate "where this case allegedly occurred while he was being supervised." In addition, the court found, home confinement would be insufficient because Mr. Jones "could take off the bracelet and could leave at any point in time."

¶ 22    That same day, May 10, 2024, the court entered a written order finding Mr. Jones's detention was necessary. This appeal followed.

¶ 23                                    II. JURISDICTION

¶ 24    Mr. Jones's motion for relief was denied on May 10, 2024, and he timely filed his notice of appeal that same day. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 25                                    III. ANALYSIS

¶ 26    Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief, the State needs to show by clear and convincing evidence that (1) "the proof is evident or the presumption great" that Mr. Jones committed a qualifying offense, (2) he "poses a real and present threat to the safety of any person or persons in the community" (the dangerousness standard), and (3) "no condition or combination of conditions" set forth in section 110-10(b) of the Code (*id.* § 110-10(b)) can mitigate either that safety risk or Mr. Jones's willful flight. *Id.* § 110-6.1(e)(1)-(3).

¶ 27    The statue makes clear that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 28    Section 110-6.1 of the Code does not establish a standard of review for orders granting,

8

denying, or setting conditions of pretrial release. We have concluded that our review of such orders is twofold. We review the circuit court's factual findings under the manifest-weight-of-the-evidence standard. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (applying a similar standard of review for the requirement of clear and convincing evidence by the State in termination-of-parental-rights proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. This is the standard we apply to the court's findings that a defendant has committed the alleged offense and that the State met its burden of proof on the dangerousness standard.

¶ 29    As to the court's decision regarding whether there are any conditions of release that can mitigate such risks, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 30    Here, Mr. Jones has elected to stand on his motion for relief rather than file a memorandum in support of his arguments, as is permitted by Rule 604. Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024). In that motion, Mr. Jones did not challenge the circuit court's finding that he committed the charged offense. Instead, he argued that the State failed to meet its burden of proving that he was

dangerous and that no condition or combination of conditions could mitigate that danger.

¶ 31    We cannot say that it was against the manifest weight of the evidence for the circuit court to consider Mr. Jones a present threat to the safety of the community based on the specific articulable facts of this case. Section 110-6.1(g) provides various factors that the court may consider in determining whether a defendant is dangerous. 725 ILCS 5/110-6.1(g) (West 2022). Those factors include but are not limited to the nature of the charged offense, including whether it involved a weapon (*id.* § 110-6.1(g)(1)); whether the defendant's criminal history included violent behavior (*id.* § 110-6.1(g)(2)(A)); whether the defendant was known to possess or have access to weapons (*id.* § 110-6.1(g)(7)); and whether at the time of the current offense, the defendant was on parole (*id.* § 110-6.1(g)(8)). Here, Mr. Jones was charged with a weapons offense, had been convicted of aggravated fleeing and eluding during which offense he ran multiple stop signs and "other traffic control devices," was clearly in possession of a weapon, and was on parole for possessing a weapon when he was charged with the present offense. Moreover, in the present offense, Mr. Jones ran from the police and then threw a loaded firearm—with an active round in the chamber—as he fled. Even in light of the mitigation, which we agree with Mr. Jones is considerable, we cannot find that the court's finding was unreasonable or arbitrary.

¶ 32    In support of his argument that the State failed to meet its burden on the dangerousness standard, Mr. Jones primarily relies on this court's decision in *Martinez*, 2024 IL App (1st) 240241-U. Although *Martinez* is an unpublished case, we may consider it as persuasive authority as permitted under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

¶ 33    In *Martinez*, 2024 IL App (1st) 240241-U, ¶ 3, the defendant was arrested and charged with unlawful possession or use of a weapon by a felon. According to the State's proffer at the hearing on its petition for pretrial detention, the defendant was pulled over by police officers after

they saw him "reaching into his waistband and appearing to manipulate an object as if placing it underneath his leg." *Id.* ¶ 4. The defendant refused to step out and "moved his hand toward the vehicle's gear shift," at which point an officer removed the keys from the vehicle's ignition. *Id.* The defendant was escorted out of the vehicle, and the officers then saw a nine-millimeter handgun on the seat where he had been sitting. *Id.* The defendant did not have a FOID card or a CCL. *Id.* In addition, at the time of his arrest, he "was on parole for a 1996 conviction and 50-year sentence for murder," and had a 1996 conviction for unlawful possession of a handgun. *Id.* ¶ 5.

¶ 34     In reversing the circuit court's denial of pretrial release, this court stated that the defendant was "apprehended in possession of a loaded handgun," but noted that "there [wa]s no evidence that he threatened anyone with the gun, or that, since being placed on parole, the defendant ha[d] engaged in any threatening or violent behavior." *Id.* ¶ 14. The court observed that the defendant had been "employed at the same company for the past two years," "live[d] with his mother," and had volunteered at a community food pantry before he was arrested. *Id.* According to the court, "[n]othing other than the evidence supporting the charged offenses and the defendant's status as a parolee support the circuit court's finding that the defendant poses a real and present threat to the *** community." *Id.*

¶ 35     We acknowledge the similarities between *Martinez* and the case before us. One difference, however, is that there was no allegation in *Martinez* that the defendant threw the loaded gun, risking injury to anyone who happened to be close by. A more critical difference is that Mr. Jones had six felony convictions in the past 11 years while the defendant in *Martinez* committed his last felony convictions in the 1990s when he was a juvenile. *Id.* ¶¶ 5, 6.

¶ 36     We also find that the circuit court's ultimate conclusion that no condition or combination of conditions were sufficient was not an abuse of discretion. Both Judge Ortiz and Judge

11

Maldonado found no conditions were sufficient to mitigate the risk Mr. Jones posed because he had illegally obtained a firearm while he was on parole, which provided a higher level of supervision than either house arrest or electronic monitoring would. On the record before us, we cannot find that no reasonable person would agree with the court's conclusion that the pretrial detention of Mr. Jones was necessary.

¶ 37                                    VI. CONCLUSION

¶ 38    For the above reasons, we affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 39    Affirmed.