2024 IL App (1st) 241848-U

No. 1-24-1848B

Order filed December 13, 2024

Fifth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 544901 |
| | ) | |
| | ) | Honorable |
| CLEVELAND JORDAN, | ) | Charles S. Beach II |
| | ) | Alfredo Maldonado |
| Defendant-Appellant. | ) | Judges Presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's pretrial detention order where its finding that defendant posed a real and present threat to the safety of the community was not against the manifest weight of the evidence and its determination that no condition, or combination of conditions, of pretrial release could mitigate that threat was not an abuse of discretion.

¶ 2    Defendant Cleveland Jordan appeals from an order of the circuit court detaining him while awaiting trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652, § 10-255, and Public Act 102-

1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. On appeal, Jordan contends that the court erred in detaining him because the State failed to meet its burden to prove that: (1) he posed a real and present threat to the safety of the community and (2) no condition, or combination of conditions, of pretrial release could mitigate that threat. For the reasons that follow, we affirm the court's detention order.

¶ 3                                I. BACKGROUND

¶ 4      The State charged Jordan with multiple firearms offenses, including one count of unlawful use of a weapon based on his alleged possession of a loaded machine gun eight months earlier. Thereafter, the State filed a petition to detain Jordan while awaiting trial. Pretrial services gave Jordan scores of three (out of six) for risk of new criminal activity and two for risk of failing to appear. Based on those scores, pretrial services recommended Jordan be released with pretrial monitoring.

¶ 5      During a hearing on the State's petition, the State asserted that, in September 2023, officers observed Jordan "in a domestic incident" and noticed the handle of a firearm protruding from his waistband. As the officers approached Jordan, he ran. During the subsequent chase, officers witnessed Jordan pull out the firearm, which had an extended magazine, from his waistband and throw it over a fence. Because the officers knew Jordan from prior encounters, they stopped chasing him and recovered the firearm, which was a .40-caliber handgun with a switch making the firearm fully automatic. Eight months later, the police arrested Jordan. The State highlighted that Jordan was 24 years old and his criminal background, which included one felony conviction from 2021 for aggravated unlawful use of a weapon for which he was sentenced to 13 months' imprisonment. The State also asserted that Jordan had a pending 2019 misdemeanor case from Indiana based on altering a firearm and carrying the weapon without a license. According to the

State, in the Indiana case, Jordan was also charged with "false informing" and resisting law enforcement. However, the Indiana case was in "warrant status" because Jordan had failed to appear in court. The State also noted that Jordan had two juvenile arrests, one for aggravated robbery in 2017, which was never adjudicated, and one for robbery in 2015, where the record was unclear about the case's disposition.

¶ 6    After contending the proof was evident, or the presumption great, that Jordan committed a detainable offense, the State argued that he posed a real and present threat to the safety of the community based on his possession of a fully automatic weapon and his criminal background, including his prior firearms conviction. Lastly, the State posited that no condition, or combination of conditions, of pretrial release could mitigate that threat because, based on his Indiana case, Jordan has shown a lack of compliance with court orders. The State also observed that, because of Jordan's prior firearms conviction, he knew he could not lawfully possess a firearm. The State posited that, because of this defiance, Jordan would still possess a firearm while on electronic monitoring or any other conditions imposed by the circuit court.

¶ 7    In response, after defense counsel contended the proof was not evident, or the presumption not great, that Jordan committed a detainable offense, counsel posited that he did not pose a real and present threat to the safety of the community because he never brandished the firearm, never threatened anyone with it and did not have a violent background. Counsel noted that, when Jordan was arrested, it occurred without incident and pretrial services gave him low scores for risk of new criminal activity and failing to appear. As to the possibility of conditions of pretrial release, counsel observed that Jordan had been on electronic monitoring for his 2021 firearms conviction and never violated the terms of that release. Counsel also highlighted that Jordan supported two children and worked fulltime as a machine operator.

¶ 8    Following the parties' arguments, Judge Charles S. Beach II, presiding as the circuit court, found the proof was evident, or the presumption great, that Jordan committed a detainable offense. Next, the court found that Jordan posed a real and present threat to the safety of the community because this case was his third firearms-related case and it involved a fully automatic firearm with an extended magazine. The court noted that such weapons were "highly dangerous" and "designed to inflict the most amount of damage it can in a very short period of time." The court remarked that it was not intended for "defense," but rather "spray[ed] bullets everywhere" and endangered anyone in the vicinity. Lastly, the court concluded that no condition, or combination of conditions, of pretrial release could mitigate the threat Jordan posed to the community. The court acknowledged that he had complied with electronic monitoring previously, but determined it could not ignore him continuing to be charged with firearms offenses, specifically three in a short period of time. According to the court, Jordan's failure to appear in court in his Indiana case demonstrated that he was "not going to comply with the conditions of pretrial release" in the instant case. The court further highlighted that the Indiana case involved "obfuscation" of identity and resisting arrest while the instant case involved fleeing from the police, all of which showed that Jordan would not "follow lawful commands." Consequently, the court orally granted the State's petition to detain Jordan while awaiting trial. The court also entered a written order consistent with its oral findings.

¶ 9    Following the circuit court's detention order, Jordan filed a motion for relief, which Judge Alfredo Maldonado, presiding as the court, heard and denied. This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    Jordan has decided to stand on his motion for relief filed in the circuit court rather than file a memorandum on appeal, which is permissible. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

In his motion for relief, Jordan did not challenge the court's finding that the proof was evident, or the presumption great, he committed a detainable offense. Instead, he argued that the State failed to meet its burden to prove he posed a real and present threat to the safety of the community and no condition, or combination of conditions, of pretrial release could mitigate that threat.

¶ 12     All defendants begin with the presumption that they are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). In order to detain Jordan while awaiting trial, the State had the burden to prove by clear and convincing evidence three propositions. *Id.* First, the State had to show the proof was evident, or the presumption great, that he committed a detention eligible offense (*id.* § 110-6.1(a), (e)(1)), which, as discussed, Jordan does not contest. Second, the State had to show that he posed a real and present threat to the safety of the community or any specific person therein. *Id.* § 110-6.1(e)(2). Third, the State had to show that no condition, or combination of conditions, of pretrial release could mitigate that threat. *Id.* § 110-6.1(e)(3).

¶ 13     When analyzing the circuit court's decision to grant the State's detention petition, we utilize a mixed standard of review. The first two propositions—that the defendant committed an eligible offense and the threat he posed to the community—are questions of facts for which we apply the manifest-weight standard. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 35. A finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable or not based on the evidence. *People v. Relwani*, 2019 IL 123385, ¶ 18. The third proposition—the appropriateness of conditions of pretrial release— involves the court exercising its discretion for which we apply the abuse-of-discretion standard. *People v. Reed*, 2023 IL App (1st) 231834, ¶ 30. The court abuses its discretion when its decision is unreasonable, arbitrary or fanciful, or where no reasonable person would make the same decision. *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 14                                    A. Threat to the Community

¶ 15     We begin with the circuit court's finding that Jordan posed a real and present threat to the safety of the community. In the instant case, the State charged Jordan with his third firearms-related offense, and despite being a felon and knowing he could not possess a firearm, he still possessed one. The court rightfully determined that Jordan habitually arms himself with dangerous weapons. See 725 ILCS 5/110-6.1(g)(2), (7) (West 2022) (providing that, in determining if a defendant poses a real and present threat, the circuit court should consider "[t]he history and characteristics of the defendant" and "[w]hether the defendant is known to possess or have access to any weapon or weapons"). What's more, Jordan did not possess a typical firearm, but rather one that had been modified into a machine gun, which our supreme court has noted belongs to "a category of dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes." (Internal quotation marks omitted). *Wilson v. County of Cook*, 2012 IL 112026, ¶ 46; see also *People v. Vance*, 2024 IL App (1st) 232503, ¶ 22 (describing the dangers of "possess[ing] a weapon that has been rigged to be fully automatic—meaning one press of the trigger unleashes a tirade of bullets in rapid succession"). As the court found, Jordan's history of firearms possession and possession of a particularly dangerous type of firearm that has no basis in self-defense demonstrates that he is a danger to the community. See *People v. Lee*, 2024 IL App (1st) 232137, ¶¶ 26-29.

¶ 16     Although Jordan argues that he did not pose a real and present threat to the safety of the community because he never brandished the firearm or threatened anyone with it, this argument ignores his extensive history of firearms-related charges and the fact that his possession of a machine gun with an extended magazine advanced no self-defense interest. Rather, a machine gun is a firearm used offensively, as the court noted, to inflict significant carnage in a short period of

time. See *Wilson*, 2012 IL 112026, ¶ 46. Moreover, when the police initially observed Jordan, he was involved "in a domestic incident." Had the officers not observed Jordan when they did, it is not inconceivable to think that they may have prevented a violent crime from occurring. See *Vance*, 2024 IL App (1st) 232503, ¶ 22 (although the defendant was only charged with unlawful possession of a machine gun, unlawful use of a weapon by a felon and criminal trespass to a motor vehicle, nonviolent offenses, "it does not stretch the imagination at all to believe that, in stopping that car and arresting the three individuals," including the defendant, "when they did, the police may have prevented a violent crime from imminently taking place").

¶ 17    Still, Jordan posits that his case is similar to the circumstances in *People v. Martinez*, 2024 IL App (1st) 240241-U, ¶¶ 14-15, where the appellate court held that a defendant being charged with a nonviolent firearms possession offense and being on parole were inadequate to show he was a danger to the community. However, Jordan's case is his third recent firearms case and involves a loaded machine gun with an extended magazine, which he threw over a fence haphazardly. Conversely, the defendant in *Martinez* was found in possession of a non-modified handgun and last committed a felony offense more than 25 years before his instant case as a juvenile, which, in part, was due to a significant period of incarceration. *Id.* ¶¶ 3-5. Given these differences, the circuit court in this case could reasonably conclude that Jordan was a danger to the community. See *People v. Jones*, 2024 IL App (1st) 241102-U, ¶ 35 (finding that its case, while similar in certain respects to *Martinez*, was sufficiently different where "the defendant threw [a] loaded gun, risking injury to anyone who happened to be close by" and accumulated several criminal cases in a short period of time).

¶ 18    Jordan further posits that he could not be considered a present threat to the community because it took the police approximately eight months to arrest him after the alleged incident

despite him being known to law enforcement. Admittedly, we do not know why it took the police eight months to arrest Jordan. But, even if we were to consider this fact as mitigation, his criminal history in conjunction with his persistent possession of firearms, including a uniquely dangerous one in this case, provided the circuit court a reasonable basis to find that he posed a real and present threat to the safety of the community. Consequently, the court's dangerousness finding was not against the manifest weight of the evidence.

¶ 19                                       B. Conditions of Pretrial Release

¶ 20    We now turn to the circuit court's determination that no condition, or combination of conditions, of pretrial release could mitigate the threat posed to the community by Jordan. Although, as Jordan notes, he has previously complied with electronic monitoring, there is ample evidence of him not complying with court orders and law enforcement. For one, Jordan has a pending case in Indiana in warrant status due to his failure to appear in court. See *People v. Green*, 2024 IL App (1st) 240212-U, ¶ 19 (concluding the circuit court reasonably found that the defendant "was unlikely to comply with any release conditions" due to, in part, an out-of-state warrant). What's more, in that case, Jordan obfuscated his identity and resisted arrest. See *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 25 (finding the circuit "court could reasonably infer that *** conditions of release would be insufficient" for the defendant where he was charged with resisting a police officer, which "show[ed] disrespect toward the law"). Moreover, in the instant case, Jordan ran from the police, which further shows his inability to comply with lawful orders. See *People v. Skelton*, 2024 IL App (1st) 240168-U, ¶ 25 (observing that past flight from the police is an indication that no condition, or combination of conditions, of pretrial release would be appropriate). Additionally, as a convicted felon, Jordan knew it was illegal for him to possess a firearm yet he did so anyway, providing the court a rational basis to conclude that he would also

fail to comply with any conditions of pretrial release. See *People v. Suggs*, 2024 IL App (1st) 240723-U, ¶ 31 ("Defendant flaunted the law because as a convicted felon, he was prohibited from possessing the firearm, a fact which gives no assurance that he would comply with any conditions of release.").

¶ 21     While Jordan may have children he supports and been gainfully employed between the time of the alleged incident and his arrest, he has demonstrated multiple times an unwillingness to comply with legal rules and orders, as the circuit court found. Given the evidence presented by the State, the court's determination that no condition, combination of conditions, of pretrial release could mitigate the threat Jordan posed to the community was not unreasonable, arbitrary or fanciful. See *People v. Davis*, 2023 IL App (1st) 231856, ¶ 31 (observing that the "[d]efendant's history showed an unwillingness to follow the rules set out by law enforcement authorities" and given the State's proffer about his criminal history, the circuit court did not err "in concluding that [he] presented a threat to the community that no conditions of pretrial release could mitigate"). Consequently, the court did not abuse its discretion by determining that no condition, or combination of conditions, of pretrial release could mitigate the threat Jordan posed to the community. Accordingly, the court properly ordered Jordan detained while awaiting trial.

¶ 22                                III. CONCLUSION

¶ 23     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 24     Affirmed.